IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ADRIENNE JENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-2422-JWL |
| | ) | |
| UNITED STATES TENNIS | ) | |
| ASSOCIATION AND KANSAS CITY | ) | |
| RAQUET CLUB, | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Adrienne Jensen, a former tennis player, filed a petition in Missouri state court alleging that defendants negligently failed to protect her from her former coach's sexual abuse and that defendants are liable under § 1589(b) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). The case was removed to the federal district court in the Western District of Missouri on the basis of both diversity jurisdiction and federal question jurisdiction. Thereafter, the case was transferred to this court under 28 U.S.C. § 1404(a).

This matter is presently before the court on defendant United States Tennis Association's ("USTA") motion to dismiss plaintiff's complaint (doc. 6) pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, defendant USTA moves to dismiss plaintiff's negligence claim on statute of limitations grounds and moves to dismiss plaintiff's TVPRA claim for failure to state a claim. As will be explained, the motion is

denied with respect to plaintiff's negligence claim and is granted with respect to plaintiff's TVPRA claim.

*Applicable Standard*

In analyzing defendant USTA's motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc*., 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted).  The court then determines whether plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citations omitted). In determining the plausibility of a claim, the court looks to the elements of the particular cause of action, "keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element." *Id*. (quotations omitted). While "the nature and specificity of the allegations required to state a plausible claim will vary based on context," "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id*. (citations and quotations omitted). Thus, a "claim is facially plausible if the plaintiff has pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A statute of limitations argument ordinarily is presented as an affirmative defense; however, the issue may be resolved on a Rule 12(b)(6) motion only where the application

of the limitations period "is apparent on the face of the complaint." *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008) (citing *Aldrich v. McCulloch Properties., Inc*., 627 F.2d 1036, 1041 & n.4 (10th Cir. 1980)).

*Background*

Consistent with the above standard, the court accepts as true the following allegations in plaintiff's complaint. Plaintiff began playing tennis at a young age and, in 2009, became a nationally ranked played at the age of 14. Plaintiff had aspirations to play tennis in college and in the Olympic games. Defendant USTA is the National Governing Body ("NGB") for the sport of tennis in the United States. Membership in the USTA is required for players who wish to compete in the Olympic Games and, because USTA maintains a national ranking of tennis players, is required for playing in amateur tournaments as well. At all pertinent times, plaintiff paid dues to the USTA and purchased insurance from the USTA. Defendant Kansas City Racquet Club ("KCRC") is a tennis facility in Merriam, Kansas. Plaintiff paid membership fees and dues to defendant KCRC. Plaintiff joined KCRC in August 2009, when she moved to Kansas City to train with Rex Haultain, a renowned coach from New Zealand who worked at KCRC and was certified by defendant USTA.

The coach-athlete relationship between plaintiff and Coach Haultain began appropriately. Plaintiff alleges that she thought highly of her coach and wanted to do whatever she could to please him. Plaintiff alleges that Coach Haultain was aware of how much plaintiff looked up to him and began to exploit her admiration and respect.

According to plaintiff, Coach Haultain slowly and methodically groomed and manipulated plaintiff and began creating situations where he could be alone with plaintiff. Coach Haultain regularly took plaintiff to facilities in Kansas City and St. Louis for training and to participate in tournaments. Neither USTA nor KCRC had a policy that prohibited Coach Haultain from traveling alone with plaintiff.

Toward the end of 2009, Coach Haultain began texting plaintiff during non-practice times, often in the evenings, to praise plaintiff's tennis skills. Throughout 2010, these text messages increased in frequency until he was texting plaintiff, who was 15 years old at the time, on a daily basis. In these text messages, Coach Haultain praised plaintiff's body and appearance and told plaintiff that he loved her and wanted to be with her forever. Plaintiff feared that her tennis performance would suffer if she stopped training with Coach Haultain. Every few weeks throughout 2010, Coach Haultain made increasing demands on plaintiff, including requesting nude photos and sexual favors from her. At practice, Coach Haultain alternated between yelling at her for perceived deficiencies in her performance and ignoring her entirely. On those occasions, Coach Haultain continued to text plaintiff in the evening without reference to his verbal and emotional abuse at practice. Neither USTA nor KCRC had a policy that prohibited Coach Haultain from texting plaintiff.

In May 2010, plaintiff and Coach Haultain traveled to Las Vegas, Nevada for a tournament. During the plane ride, Coach Haultain placed plaintiff's hand on his penis while she pretended to sleep. Plaintiff removed her hand, but Coach Haultain took her hand and again placed it on his penis. In July 2010, plaintiff and Coach Haultain traveled

to Alabama for a tournament. During that trip, Coach Haultain entered plaintiff's hotel room to give plaintiff a back massage. During the summer of 2010, Coach Haultain continued to attempt to cultivate a sexual relationship with plaintiff and he complained to her that she was not ready for a relationship. When plaintiff did not respond to his sexual advances, Coach Haultain responded with anger at practice and then ultimately would refuse to speak to her, forcing plaintiff to approach him in the hopes of reestablishing communication and coaching. Plaintiff alleges that she felt immense pressure to please her coach because his coaching and connections in the tennis world were a vital component of her success. Neither USTA nor KCRC had any procedures in place through which plaintiff could report sexual abuse and had no educational programming in place to aid plaintiff in understanding what was happening to her.

In August 2010, plaintiff traveled with her sister and Coach Haultain to San Diego, California for a tournament. On the way to the airport, Coach Haultain showed plaintiff pictures of his penis while her sister was in the backseat. Plaintiff felt sick to her stomach and helpless to object because her sister was in the car. During the tournament in San Diego, Coach Haultain told plaintiff how "hard" she made him. Plaintiff felt that her coach's constant harassment, attention and abuse was her fault. In the fall of 2010, plaintiff and Coach Haultain drove together to St. Louis for a tournament. Coach Haultain stroked plaintiff's leg in the car and, in the evening, came into her hotel room and laid on plaintiff's bed. Plaintiff alleges that the pressure to perform athletically and sexually for her coach was so extreme that she could not play in the tournament due to severe psychological stress and that she withdrew from the tournament.

In December 2010, plaintiff and Coach Haultain traveled to Arizona for a tournament. Coach Haultain came into her hotel room and again laid on her bed. On this occasion, Coach Haultain sexually assaulted plaintiff by, among other things, digitally penetrating her vagina. Plaintiff was afraid to reject his advances. Plaintiff alleges that Coach Haultain made her promise "that she would not tell anyone what he had done." After the trip to Arizona, Coach Haultain continued to pursue plaintiff. Plaintiff alleges that Coach Haultain's sexual, verbal, physical and emotional abuse continued until his arrest. In 2013, Coach Haultain entered a plea of guilty to solicitation of child pornography. He was sentenced to 78 months imprisonment and was ultimately deported. Plaintiff was unable to trust her coaches after she returned to tennis and has experienced anxiety, depression and guilt as a result of her coach's actions.

Plaintiff alleges that defendants USTA and KCRC negligently failed to protect her from Coach Haultain. With respect to defendant USTA, plaintiff alleges that the United States Olympic Committee ("USOC") requires all NGBs, including USTA, to train all of its adult members, including coaches, on sexual abuse and sexual abuse prevention. She alleges that the USOC, in 2010, commissioned a task force to prevent sexual abuse in sports controlled by the USOC and its NGBs. The task force suggested that all NGBs, including USTA, develop policies and procedures concerning sexual abuse, including policies prohibiting sexual abuse, procedures for the reporting of sexual abuse and programs for educating all members about sexual abuse. Plaintiff alleges that USTA failed to implement any policies or procedures suggested by the task force.

Plaintiff further alleges that the sexual abuse of minors by individuals with authority over those minors is a well-known problem in the United States, and that "calculated cover-ups" by groups like the Catholic Church, Little League, and the Boy Scouts was national news prior to 2010.  According to plaintiff, by 2010, sexual abuse in sports controlled by the USOC was an undeniable epidemic and major media outlets have been reporting on sexual abuse in USOC-controlled NGBs sports since the early 1990s.  Despite these well-known problems, according to plaintiff, defendant USTA did not have a policy prohibiting its certified coaches from being alone with children or from traveling alone with children to tournaments it sanctioned.  Defendant USTA did not have a policy prohibiting its certified coaches from texting minor athletes.  Similarly, plaintiff alleges that defendant KCRC did not have a policy prohibiting its adult employees from being alone with children at its facility or from traveling alone with children to tournaments.  Defendant KCRC did not have a policy prohibiting its adult employees from texting its minor members.  Plaintiff alleges that USTA did not implement a comprehensive sexual abuse prevention program until 2014.

*Statute of Limitations*

In its motion to dismiss, defendant USTA contends that plaintiff's negligence claim is barred by Kansas's three-year statute of limitations.  *See* K.S.A. § 60-523(a) (no action for recovery of damages suffered as a result of childhood sexual abuse shall be commenced more than 3 years after the date the person turns eighteen or more than 3 years from the date the person discovers or reasonable should have discovered that the injury was caused

by childhood sexual abuse, whichever occurs later).  According to defendant, the statute of limitations began running in October 2013, when plaintiff, already eighteen years of age, testified at her coach's sentencing hearing about the nature and extent of the injuries she suffered as a result of his abuse.  Plaintiff concedes that her negligence claim would be barred under Kansas law.  Plaintiff, however, contends that dismissal is inappropriate because the complaint does not establish on its face that Kansas law applies to her claim. As argued by plaintiff, she suffered abuse not only in Kansas, but also in Arizona, Missouri and Nevada and the statute of limitations has not expired in any of these other states.

Typically, a federal court sitting in diversity or exercising supplemental jurisdiction over state law claims in a federal question lawsuit must apply the substantive law of the state in which it sits.  *BancOklahoma Mortg. Corp. v. Capital Title Co*., 194 F.3d 1089, 1103 (10th Cir. 1999) (The rule in diversity cases that the federal court "applies the substantive law . . . of the forum state . . . also applies when a federal court exercises supplemental jurisdiction over state law claims in a federal question lawsuit.").  This case, however, was transferred to this court from the Western District of Missouri under 28 U.S.C § 1404(a).  *See* Doc. 12.  Thus, the law of the transferor court's forum state—here, Missouri—applies.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

Missouri deems statutes of limitations issues procedural and, thus, governed by Missouri law.  *Alvarado v. H&R Block, Inc*., 24 S.W.3d 236, 241 (Mo. Ct. App. 2000). But when a cause of action "originates" in a state other than Missouri, Missouri applies the foreign state's statute of limitations through Missouri's borrowing statute:

> Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.

*Id*. at 241-42 (quoting Mo. Rev. Stat. § 516.190).[1]  In its motion to dismiss, USTA contends that plaintiff's negligence cause of action "originated" in Kansas, triggering an application of Missouri's borrowing statute, which would then bar the claim.  As explained by the Missouri Court of Appeals in *Alvarado*, the term "originated" as used in § 516.190 is synonymous with "accrued" as used in § 516.100.  *Id*. at 242.  That section, in turn, provides that a "cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment."  *Id*. (quoting § 516.100).   In *Alvarado*, the court clarified that "[d]amage is sustained and capable of ascertainment when it *can be* discovered or made known, not when the plaintiff actually discovers the injury or wrongful conduct, even though the amount of damage is unascertained."  *Id*. at 242 (emphasis in original).  In applying this test, Missouri courts have held that a cause of action accrues when an injury is complete as a legal injury, which occurs when the plaintiff could have successfully maintained the action.  *Id*.

Significantly, the court in *Alvarado* emphasized that § 516.100 "not only determines when a cause of action accrues but also *where* it accrues for the purpose of applying the

---

[1] If the foreign state's statute of limitations bars the action, Missouri's borrowing statute bars the action in Missouri as well. *Alvarado*, 24 S.W.3d at 242.  In other words, the borrowing statute constitutes a codification of a conflicts-of-law rule such that no conflicts-of-law question is presented when § 516.190 is involved.  *Id*. (citations omitted).

borrowing statute, § 516.190." *Id.* (emphasis in original) (citations omitted).  The cause arises where and when the final significant event that is essential to a suable claim occurs. *Id.*  In its motion, USTA summarily asserts that plaintiff's negligence claim "originated" in Kansas because plaintiff "first came into contact with Mr. Haultain through her training and membership at the Kansas City Racquet Club in Merriam, Kansas."  Defendant USTA has made no effort to analyze where plaintiff's negligence claim originated pursuant to the law as outlined in *Alvarado*.  Clearly, defendant does not suggest that the "final significant event" essential to plaintiff's negligence claim occurred at the racquet club.   In its reply brief, defendant USTA asserts for the first time that plaintiff's claim originated in Kansas because plaintiff presumably was at her Kansas residence when Coach Haultain began texting her in the evenings and soliciting a sexually exploitive relationship.  According to USTA, Coach Haultain's solicitation of nude photos from plaintiff was the final significant event essential to her negligence claim "as evidenced by his conviction and sentencing for solicitation of nude photos from Plaintiff."

This argument ignores the fact that plaintiff's negligence claim is not based on Coach Haultain's solicitation of photos and is not couched in terms of USTA's failure to protect plaintiff from that solicitation.   Plaintiff's negligence claim instead focuses primarily on defendant USTA's failure to protect plaintiff from sexual abuse at the hands of one of its certified coaches during and in relation to USTA-sanctioned tournaments. While those text messages may have played a critical role in Coach Haultain's manipulation of plaintiff and may have served as a catalyst for the abuse, plaintiff did not have a suable claim for failure to protect against sexual abuse until Coach Haultain's

conduct escalated beyond those text messages—in all likelihood when he began physically assaulting plaintiff.  Viewing plaintiff's negligence claim through this lens, it is plausible that the "final significant event" essential to her claim occurred in a state other than Kansas. In other words, it is not apparent from the face of the complaint that plaintiff's negligence claim originated in Kansas and, accordingly, the court must deny USTA's motion to dismiss plaintiff's negligence claim.  *See Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008) (statute of limitations issue may be resolved on 12(b)(6) motion where application of the statute of limitations is apparent on the face of the complaint).

*TVPRA Claim*

Plaintiff also asserts a claim against defendant USTA under the civil liability provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.  Specifically, plaintiff alleges that defendant USTA violated 18 U.S.C. § 1589's prohibition on forced labor or services.  Section 1589 provides the following:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint shall be punished as provided under subsection (d).

11

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

Thus, one can violate the statute either as a primary offender or, as reflected in subsection (b), by benefiting from participation in a "venture" with the primary offender. *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). Here, plaintiff alleges that defendant USTA is liable under § 1589(b) because it benefitted from participation in a venture with Coach Haultain who, in turn, was engaged in prohibited conduct under § 1589 of the TVPRA.

The parties agree that plaintiff, to state a claim under § 1589(b) of the TVPRA against defendant USTA, must allege facts plausibly showing that USTA knew or recklessly disregarded the fact that Coach Haultain was abusing plaintiff. *See Bistline*, 918 F.3d at 875-76 (complaint adequately stated claim for venture liability under 1589(b) where allegations plausibly showed that defendants had ample notice of illegal activities and were well aware of crimes being committed against plaintiffs); *Ricchio v. McLean*, 853 F.3d 553, 555-56 (1st Cir. 2017) (complaint adequately stated § 1589(b) claim against motel owners where allegations plausibly alleged that owners were aware of a woman being held against her will and sexually abused while in their hotel); *H.H. v. G6 Hospitality, LLC*, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019) (denying 12(b)(b) motion with respect to § 1589(b) claim where plaintiff alleged that defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence and alleged facts specific to her own sex

trafficking, including a number of signs she alleges should have alerted staff to her situation, and specific incidents in which hotel staff observed her abuse and failed to report it); *Gilbert v. United States Olympic Committee*, 423 F. Supp. 3d 1112, 1131 (D. Colo. Sept. 27, 2019) (female taekwondo athletes stated § 1589(b) claim against national governing body for taekwondo where plaintiffs alleged that they reported coach's abuse to defendant).

Defendant USTA moves to dismiss this claim on the grounds that plaintiff has not alleged facts plausibly showing that USTA knew or recklessly disregarded the fact that Coach Haultain was sexually abusing plaintiff. As highlighted by defendant, plaintiff does not allege that she ever notified USTA about Coach Haultain's conduct and she does not allege that anyone employed by USTA witnessed Coach Haultain's conduct or otherwise had any reason to know about Coach Haultain's conduct. And even aside from Coach Haultain's specific conduct against plaintiff, there are no allegations in the complaint that the USTA generally was aware of sexual abuse occurring within USTA or occurring at USTA-sanctioned tournaments or that USTA was aware that Coach Haultain abused any other athletes.

Plaintiff does not dispute that the allegations in the complaint do not plausibly suggest that plaintiff notified USTA about Coach Haultain's conduct or that USTA witnessed Coach Haultain's conduct. Plaintiff's theory of constructive knowledge is that "the entire premise of elite sport serving as a petri dish for predator coaches to flourish has been well known since at least the second half of the Twentieth Century." Plaintiff points to sexual abuse cover-ups in United States Swimming and United States Gymnastics and

generally asserts that sexual abuse within USOC-controlled sports is an "undeniable epidemic." Plaintiff argues that it is reasonable to infer from this rampant sexual abuse in other sports that USTA knew that Coach Haultain was abusing plaintiff. Plaintiff directs the court to no cases supporting the inference she suggests and it is simply too attenuated to be reasonable. The only case offered by plaintiff in her submissions is *Gilbert v. United States Olympic Committee*, 423 F. Supp. 3d 1112 (D. Colo. Sept. 27, 2019). In that case, however, the defendant's 12(b)(6) motion was denied because the plaintiffs specifically alleged in support of their § 1589(b) claim that they complained to the defendant about sexual abuse at the hands of their coach and that the defendant purposefully delayed investigating those complaints so that the coach could participate in the 2016 Olympic Games. *Id*. at 1131, 1149. Plaintiff's allegations here are not remotely similar and the court has uncovered no cases supporting the inference proposed by plaintiff. Because plaintiff has failed to allege facts plausibly showing that defendant USTA knew or recklessly disregarded the fact the Coach Haultain was abusing plaintiff, her claim necessarily fails. Defendant USTA's motion to dismiss this claim is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant United States Tennis Association's motion to dismiss (doc. #6) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 30th  day of October, 2020, at Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge