UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ADRIENNE JENSEN,<br><br>                  Plaintiffs,<br><br>v.<br><br>UNITED STATES TENNIS<br>ASSOCIATION and FLEX FINANCIAL<br>HOLDING COMPANY, d/b/a Kansas<br>City Racquet Club,<br><br>                  Defendants. | Case No. 20-cv-2422-JWL-TJJ |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant United States Tennis Association, Inc's ("USTA") Motion for Protective Order (ECF No. 90). The Court already advised the parties of its rulings (ECF No. 98). This Memorandum and Order explains the Court's reasoning.

**I.  Factual Background**

When the motion was filed, the parties were preparing for a 30(b)(6) deposition of USTA's designee, set for December 17, 2022. In its motion, Defendant USTA contends that many of Plaintiff's identified topics are too broad and seek information on topics that are beyond the scope of the case's first phase of discovery—which is limited to the potentially dispositive issues of legal duty, choice of law, and statute of limitations.[1]

**II.  Legal Standard**

Defendant USTA moves for a protective order, but also claims that certain topics are not relevant. Therefore, the standards for both a protective order and relevancy are at issue here.

---

[1] ECF No. 59 at 1 n.1.

1

The decision to enter a protective order is within the court's broad discretion.[2] Pursuant to Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[3] Despite this broad discretion, "a protective order is only warranted when the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[4] In addition, the party seeking a protective order bears the burden of establishing good cause.[5] The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[6] The court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required."[7] The Supreme Court has recognized "[t]he trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[8]

Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[9] Information still "need not be admissible in evidence to be discoverable."[10] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of

---

[2] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).
[3] Fed. R. Civ. P. 26(c)(1).
[4] *Herrera v. Easygates, LLC*, No. 11-CV-2558-EFM-GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)).
[5] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).
[6] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).
[7] *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).
[8] *Seattle Times*, 467 U.S. at 36.
[9] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).
[10] Fed. R. Civ. P. 26(b)(1).

relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[11] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[12] Relevancy determinations are generally made on a case-by-case basis.[13] And Rule 26(b)(2)(C) provides "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

Along with these principles, this Court is mindful of its duty to construe and administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding."[14]

## III. Analysis

### A. Scope of Duty

Defendant USTA frames the first issue as this: "USTA believes that [the] question of duty at issue in Phase 1 is, specifically, what legal duty was owed to Plaintiff Adrienne Jensen individually at the time she alleges she was abused by Rex Haultain. Whereas, Plaintiff believes the scope is what legal duty USTA owed to all minor athletes at all times."[15]

---

[11] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).
[12] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).
[13] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).
[14] Fed. R. Civ. P. 1.
[15] ECF No. 90 at 4.

In her Second Amended Complaint, Plaintiff alleges, "The USTA had a duty to protect Adrienne Jensen, who was a paying member of the USTA, and all other minor members from sexual abuse, battery, harassment, and exploitation by USTA certified, member coaches, including Haultain."[16]

This Court does not intend to bind the District Court to any definition of duty (particularly without yet knowing which state's law will apply). But for purposes of Phase 1 discovery, the undersigned determines that the relevant legal duty is the duty to Plaintiff. Determining whether that duty exists, however, may require more information than that relating specifically to Plaintiff and Haultain. For example, if the exploitation of minors within the USTA has been as rampant as Plaintiff claims, there may be an argument that USTA should have been aware of the risks and therefore owed a duty to Plaintiff to take protective and preventative measures. This is the case, within the relevant time frame, regardless of whether the past perpetrator was Haultain or another coach.

Defendant has not shown good cause for protecting its 30(b)(6) representative from inquiries about other sexual exploitation of minors in the USTA (by Haultain or other coaches), at least for a specified reasonable amount of time leading up to the events in this case, as addressed below. Significantly, Defendant does not even attempt to meet the standard for a protective order by showing that its 30(b)(6) designee needs protection from "annoyance, embarrassment, oppression, or undue burden or expense."[17] The Court therefore will not enter a general protective order prohibiting Plaintiff from inquiring about the sexual abuse of minors

---

[16] ECF No. 57 at 15.
[17] Fed. R. Civ. P. 26(c)(1).

within the UTSA, for some time prior to the time frame of her own allegations. The Court next considers the appropriate time period.

**B.      Relevant Time Period**

Defendant UTSA argues that the relevant time period for any discovery lasts only from 2009 through August 2011, which is the time period Plaintiff alleges she was abused by Rex Haultain. Plaintiff's list of topics contains few date ranges, but includes dates going back to 1979 and extending through 2015. As one specific example, Plaintiff wants to question Defendant USTA's 30(b)(6) designee on a series of letters from 2012 between USTA and the US Olympic Committee about Safe Sports standards.

The Court agrees with Defendant as to most of the listed topics. With the exception of Topics 10, 13, and 15, the Court limits the temporal scope of inquiry to between 2009 and August 2011. But as for Topics 10, 13, and 15, the Court disagrees with both parties. While the duty at issue may be USTA's duty to Plaintiff, USTA's knowledge of other prior sexual abuse by coaches and the programs it had in place may be relevant to defining that duty. However, events that occurred after August 2011 and programs in place after that period would not be relevant in demonstrating the scope of USTA's duty to Plaintiff. With respect to the example identified above—the 2012 letters—these do not have any bearing on USTA's duty to Plaintiff in 2011 and before.

Although the Court determines that some time period before 2009 is relevant for discovery of prior incidents of sexual abuse and Defendant's programs, that time period does not extend backward infinitely. The Court must put parameters on the temporal scope of discovery to keep it reasonable and proportional to the needs and issues in the case. Neither party offers any suggestions or guidelines for the Court to determine that scope, so the Court, in its discretion,

determines that a reasonable and proportionate limit of ten years is appropriate. In other words, Plaintiff may inquire as to Topics 10, 13, and 15 about prior sexual abuse of minors in the USTA and USTA's related programs from 2001 through August 2011. Incidents and programs dating earlier than 2001 and after August 2011 are beyond the scope of the discovery permitted.

### C.    Topics 10 and 13

Plaintiff's 30(b)(6) topics 10 and 13 are as follows:

> 10. Sexual abuse of minors at USTA prior to 2015;
>
> . . . .
>
> 13. The Safe Sport Program or child protection programs at USTA from 1979 to the present, including: a. any rules governing travel by minors to USTA tournaments, b. historic sexual abuse of minor cases in USTA, c. the disciplinary process for coaches accused of sexual abuse of minors, d. the banned list of coaches maintained by USTA, e. the history of the banned coaches list, f. USTA's ability to ban coaches (and USTA's historic ability to ban coaches), g. any Safe Sport training materials, presentations, or other information provided to USTA minor athletes on appropriate coach athlete relationships, h. any Safe Sport training materials, presentations, or other information provided to USTA adult members, on appropriate coach athlete relationships, particularly minor athletes . . . .[18]

In addition to its temporal scope arguments regarding Topics 10 and 13, Defendant USTA also argues that inquiry into sexual abuse of minors at USTA prior to 2015 is not relevant to the issues to be addressed in Phase 1 of the case: duty, statute of limitations, and which state's law applies. Defendant USTA seeks a Protective Order prohibiting Plaintiff from inquiring about allegations of sexual abuse by other USTA members. Defendant also characterizes these topics as "vague."[19]

---

[18] ECF No. 90-1 at 4–5.
[19] ECF No. 90 at 6.

As noted in Subsection A, *supra*, Defendant UTSA has not shown good cause for protecting its representative from discussing other prior allegations of sexual abuse, whether by Haultain or others. Neither has Defendant USTA met its burden on relevance (other than the lack of relevance of events after the events of this case). Evidence of relatively recent, prior sexual abuse of minors in the USTA, as well as USTA's related programs, is relevant on its face.[20] Defendant USTA offers nothing beyond conclusory statements that prior abuse is irrelevant to duty. This is insufficient to prohibit Plaintiff from inquiry, subject to the ten-year look-back limit discussed *supra*.

### D.   Topic 9

Topic 9 deals with Defendant USTA's insurance history. Defendant USTA argues that because its insurance history isn't admissible at trial, the deposition topic isn't relevant. But this is not the standard for relevance. Rather, relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[21] That said, Plaintiff also does not offer a viable relevancy argument; Plaintiff submits only that Defendant USTA's "purchase of specific sexual abuse insurance is relevant to show control and foreseeability . . . ."[22] The purchase of insurance is not relevant on its face, and Plaintiff has not met her burden. The Court is unwilling to make the stretch that if a person or entity purchases insurance to cover a certain type of event, such purchase supports a presumption that the event is therefore foreseeable. The Court strikes Topic 9.

---

[20] In reaching this conclusion, the Court does not find persuasive Plaintiff's argument recounted in Defendant's motion about the hypothetical reporting of Haultain's abuse. ECF No. 90 at 6.
[21] *Oppenheimer Fund, Inc.*, 437 U.S. at 351.
[22] ECF No. 94 at 6.

### E. Topics 2 and 3

In Topics 2 and 3, Plaintiff wants to inquire about National Team travel and the selection for official USTA tennis teams. Specifically, she identifies as topics "[n]ational team travel and travel for USTA-sanctioned tournaments from 2008–13, inclusive"; and "[s]election for official USTA Tennis teams, including but not limited to teams for 'protected' Sports Act Competition, including the Olympic Games."

Defendant USTA argues these topics are irrelevant because USTA has never selected Plaintiff to be on a National Team, an official USTA team, or an Olympic tennis team. Defendant USTA wants any inquiry limited to travel selection for tournaments Plaintiff played in or traveled to with Haultain. The Court disagrees; these topics are relevant on their face. Plaintiff's theory rests largely on the premise that Defendant USTA both required and facilitated travel, and that selection for elite teams implicitly, if not explicitly, required Plaintiff to be placed in one-on-one situations with Haultain. However, the temporal scope on Topic 2 is too long and Topic 3 needs a temporal limitation. The Court limits both topics to the time period of 2009 through August 2011. Defendant USTA has not otherwise shown how the discovery will "annoy[], embarrass[], oppress[], or [cause] undue burden or expense," as required by Fed. R. Civ. P. 26(c)(1) to justify a protective order.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 22nd day of December 2021.

_____
Teresa J. James
U.S. Magistrate Judge