## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Adrienne Jensen,

                    Plaintiff,

          v.                                    Case No. 20-2422-JWL

United States Tennis Association
and Flex Financial Holding Company
d/b/a Kansas City Racquet Club,

                    Defendants.


## MEMORANDUM AND ORDER

Plaintiff Adrienne Jensen, a former tennis player, filed suit alleging that defendants negligently failed to protect her from her former coach's sexual abuse. This matter is presently before the court on defendant United States Tennis Association's ("USTA") motion for summary judgment (doc. 110) and defendant Flex Financial Holding Company's motion for summary judgment (doc. 112). As will be explained, both motions are granted.[1]


**Facts**

The following facts are uncontroverted or related in the light most favorable to plaintiff as the nonmoving party. Defendant USTA is the National Governing Body for

---

[1] The court previously dismissed plaintiff's claim against defendant USTA under the civil liability provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.

the sport of tennis in the United States.  Membership in the USTA is required for players who wish to compete in the Olympic Games and, because USTA maintains a national ranking of tennis players, is required for playing in tournaments as well.  Competitive players are seeded in tournaments based on their USTA ranking.  At the times pertinent to this lawsuit, defendant Flex Financial Holding Company operated a tennis facility in Merriam, Kansas known as Kansas City Racquet Club (hereinafter "KCRC").  Flex Financial did not operate any facilities outside of Kansas.  Plaintiff Adrienne Jensen, who began playing tennis at a young age and had aspirations to play in the Olympics and at the college level, was a member of the USTA and trained at KCRC.

In August 2009, plaintiff and her parents moved to the Kansas City area so that plaintiff could train with a private tennis coach, Rex Haultain.  Plaintiff, who was fourteen years old, began training with Mr. Haultain that month at KCRC.  Plaintiff trained with Mr. Haultain five days each week at KCRC for several hours at a time.  At some point, plaintiff began traveling with Mr. Haultain for out-of-town tournaments.  During this same time frame, Mr. Haultain began texting plaintiff during non-practice times, often in the evenings, to praise plaintiff's tennis skills.  These text messages increased in frequency until he was texting plaintiff on a daily basis.  In these text messages, Mr. Haultain praised plaintiff's body and appearance and told plaintiff that he loved her.  Mr. Haultain made increasing demands on plaintiff, including requesting nude photos and sexual favors from her.

In May 2010, plaintiff and Mr. Haultain traveled to Las Vegas, Nevada for a tournament.  During the flight to Las Vegas, Mr. Haultain placed plaintiff's hand on his

penis multiple times.  Plaintiff was "mortified" by Mr. Haultain's conduct and took her hand away, only to have Mr. Haultain place her hand back on his penis during the flight. Plaintiff admits that this incident was the first instance of physical, sexual abuse by Mr. Haultain.  Plaintiff was fifteen years old at the time.  In July 2010, plaintiff and Mr. Haultain traveled to Alabama for a tournament.  During that trip, Mr. Haultain sexually abused plaintiff in a hotel room by massaging plaintiff and instructing her to remove her bra during the massage.  On other nights of the trip, he massaged her, held her in bed and kissed her.  During the summer and fall of 2010, Mr. Haultain touched plaintiff's crotch over her shorts at least thirteen times as they exited the tennis bubbles at KCRC and, on some occasions during this time frame, he placed his hands underneath her shorts to touch her as they exited the tennis bubble.  On occasion, Mr. Haultain kissed plaintiff inside the tennis bubble at KCRC.

In December 2010, plaintiff and Mr. Haultain traveled to Arizona for a tournament. Mr. Haultain came into her hotel room and sexually assaulted plaintiff by, among other things, digitally penetrating her vagina.  Plaintiff reported Mr. Haultain's abuse to her parents in January 2011 and she stopped training with him at that time.  Plaintiff reported the abuse to one of her high school teachers in August 2011 and the abuse was then reported to the police.  Mr. Haultain was arrested in February 2013.  He was ultimately sentenced to 78 months imprisonment and deported.

Plaintiff alleges that defendants USTA and KCRC negligently failed to protect her from Coach Haultain.

3

**Summary Judgment Standard**

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

Where, as here, a defendant properly invokes and supports an affirmative defense on summary judgment, that party is entitled to judgment as a matter of law unless the plaintiff identifies a specific factual dispute material to that defense:

> A defendant may use a motion for summary judgment to test an affirmative defense which entitles that party to judgment as a matter of law. The defendant making such a motion must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law.

*Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citations omitted); *see Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014) ("The

4

statute of limitations is an affirmative defense, so the defendant [moving for summary judgment] bears the burden of demonstrating that there is no material fact in dispute on the issue of whether the statute of limitations bars the claim.").

**Discussion**

In their motions for summary judgment, defendants contend that plaintiff's negligence claims are barred by the applicable statute of limitations.  In the alternative, defendants contend that they owed no duty of care to plaintiff under applicable state laws.  As will be explained, the uncontroverted facts demonstrate that plaintiff's negligence claims are barred by the statute of limitations.  The court, then, grants defendants' motions for summary judgment and declines to address defendants' duty arguments.

Typically, a federal court sitting in diversity or exercising supplemental jurisdiction over state law claims in a federal question lawsuit must apply the substantive law of the state in which it sits.  *BancOklahoma Mortg. Corp. v. Capital Title Co*., 194 F.3d 1089, 1103 (10th Cir. 1999) (The rule in diversity cases that the federal court "applies the substantive law . . . of the forum state . . . also applies when a federal court exercises supplemental jurisdiction over state law claims in a federal question lawsuit.").  This case, however, was transferred to this court from the Western District of Missouri under 28 U.S.C § 1404(a).  *See* Doc. 12.  Thus, the law of the transferor court's forum state—here, Missouri—applies.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

Under Missouri law, a statute of limitations issue is procedural and, thus, governed by Missouri law.  *Alvarado v. H&R Block, Inc*., 24 S.W.3d 236, 241 (Mo. Ct. App. 2000).

But when a cause of action "originates" in a state other than Missouri, Missouri applies the

foreign state's statute of limitations through Missouri's borrowing statute:

> Whenever a cause of action has been fully barred by the laws of the state,
> territory or country in which it originated, said bar shall be a complete
> defense to any action thereon, brought in any of the courts of this state.

*Id*. at 241-42 (quoting Mo. Rev. Stat. § 516.190).[2]  As explained by the Missouri Court of

Appeals in *Alvarado*, the term "originated" as used in § 516.190 is synonymous with

"accrued" as used in § 516.100.  *Id*. at 242.  That section, in turn, provides:

> [A] cause of action shall not be deemed to accrue when the wrong is done or
> the technical breach of contract or duty occurs, but when the damage
> resulting therefrom is sustained and is capable of ascertainment, and, if more
> than one item of damages, then the last item, so that all resulting damage may
> be recovered, and full and complete relief obtained.

Mo. Rev. Stat. § 516.100. In *Powel v. Chaminade College Preparatory, Inc*., 197 S.W.3d

576 (Mo. 2006) (en banc), the Missouri Supreme Court described the "capable of

ascertainment" test as "objective." Id. at 584.  The court explained an injury is objectively

capable of ascertainment "when a reasonable person would have been put on notice that an

injury and substantial damages may have occurred and would have undertaken to ascertain

the extent of the damages." *Id.*  The parties agree that the foregoing framework applies to

the statute of limitations issue presented in defendants' motions.

---

[2] If the foreign state's statute of limitations bars the action, Missouri's borrowing statute
bars the action in Missouri as well. *Alvarado*, 24 S.W.3d at 242.  In other words, the
borrowing statute constitutes a codification of a conflicts-of-law rule such that no
conflicts-of-law question is presented when § 516.190 is involved.  *Id.* (citations
omitted).

The parties diverge over the proper application of the "capable of ascertainment" standard. Defendants assert that plaintiff's injury was capable of ascertainment at the time the abuse occurred. Defendant USTA contends, then, that plaintiff's injury was capable of ascertainment the first time that she was subjected to physical, sexual abuse by Mr. Haultin—in May 2010, on the plane to Las Vegas when Mr. Haultain placed plaintiff's hand on his penis several times and she continually pulled her hand away. Defendant KCRC contends that plaintiff's injury was capable of ascertainment the only time when Mr. Haultain sexually abused her at the KCRC facility—during the summer and fall of 2010. Plaintiff, on the other hand, insists that factual questions exist with respect to when the damages sustained by plaintiff were capable of ascertainment. In the alternative, plaintiff contends that her injury was capable of ascertainment at the time of the last instance of abuse—in December 2010 in Arizona.

Defendants' argument that plaintiff's injury was capable of ascertainment at the time the abuse occurred is clearly supported by Missouri law. Missouri courts have consistently held that, in cases involving sexual abuse absent repressed memory of the sexually abusive conduct, the injury is objectively capable of ascertainment, as a matter of law, at the time of the abusive conduct itself. *Walker v. Barrett*, 650 F.3d 1198, 1204 (8th Cir. 2011); *State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 324 (Mo. banc 2016) ("Except in cases of repressed memory, damages are usually ascertainable at the time of the tortious conduct, which normally is sufficient to place a reasonably prudent person on notice of a potentially actionable injury.").

In *Walker*, the plaintiff alleged that his vocal music teacher in junior high and high school sexually abused him beginning when he was 15 years old and continuing through his high school years. 650 F.3d at 1201. The alleged abuse involved "fellatio, forced fellatio, fondling, and masturbation." *Id*. Just before his 31st birthday, the plaintiff filed suit alleging, among other things, negligence claims against the school district and principal. *Id*. The district court dismissed the negligence claims as time-barred under Missouri law, finding that the plaintiff's claims were capable of ascertainment when he was subjected to the sexual abuse—namely, the forced fellatio—beginning when he was 15 years old. *Id*. at 1202. On appeal, the plaintiff argued that, under *Powel v. Chaminade College Preparatory, Inc*., 197 S.W.3d 576, 584–85 (Mo. 2006) (en banc), the statute of limitations did not accrue at the moment of the "technical wrong" but from the time that substantial injury has occurred and is capable of ascertainment. *Id*. at 1203. Stated another way, the plaintiff argued that "the issue depends on whether the plaintiff's damages—not the wrongful act itself—were objectively capable of ascertainment." *Id*. He urged that the inquiry was fact intensive, especially because he had "assimilated the abuse as something else" and "could not ascertain his damages until shortly before he filed the lawsuit." *Id*.

The Eighth Circuit rejected the plaintiff's argument and affirmed the district court's dismissal of the negligence claims as time barred. In doing so, the Circuit explained that the rule set forth in *Powel* was limited to cases of repressed memory of the sexually abusive conduct. *Id*. at 1204. The Circuit went on to explain that, absent repressed memory, Missouri courts since *Powel* have held that an injury was objectively capable of ascertainment, as a matter of law, at the time of the abusive conduct itself. *Id*. (citing *State*

8

*ex rel. Marianist Province of U.S. v. Ross*, 258 S.W.3d 809 (Mo. 2008) (en banc); *Dempsey v. Johnston*, 299 S.W.3d 704 (Mo. Ct. App. 2009)).  Because the plaintiff in *Walker* did not allege that he had repressed the memories of his teacher's abuse, and because the complaint (through its use of the phrase "*forced* fellatio") implied that the plaintiff understood the abuse to be wrong at the time it occurred, the Circuit held that the plaintiff's claims accrued at that time that abuse occurred, when he was 15 years old.  *Walker*, 650 F.3d at 1205.

Plaintiff relies on *Powel* to suggest that it is the capability of ascertaining substantial damage that begins the running of the statute of limitations.  But plaintiff does not allege that she repressed the memories of Mr. Haultain's abuse and, as such, *Powel* clearly has no application here. And, like the situation in *Walker*, it is clear that plaintiff understood on the plane to Las Vegas that Mr. Haultain's abuse was wrong at the time it occurred.  She admitted that she was "mortified" by his conduct and pulled her hand away.  Plaintiff's damages, then, were capable of ascertainment in May 2010 on the trip to Las Vegas.[3]  In Nevada, the applicable statute of limitations on plaintiff's negligence claims is two years after reaching the age of eighteen.  Nev. Rev. Stat. Ann. § 11.190(e).  Plaintiff turned eighteen in February 2013 and, accordingly, the statute of limitations on her negligence claims expired in February 2015.  Because she did not file her claims until June 2020, they are clearly time barred via operation of Missouri's borrowing statute.

---

[3] The parties agree that the abuse that occurred on the flight is deemed to have occurred in Nevada.

Significantly, plaintiff does not dispute that her claims are barred under Nevada law. And to the extent her claims against defendant KCRC necessarily accrued in Kansas, she does not dispute that her claims are similarly barred under Kansas law.[4]  Plaintiff was sexually abused by Mr. Haultain in Kansas in the summer and fall of 2010.  In Kansas, the applicable statute of limitations on plaintiff's negligence claims is three years after reaching the age of eighteen.  See K.S.A. § 60-523(a).  The statute of limitations expired on these claims in February 2016.  Her claims that accrued in Kansas, then, are clearly time-barred via Missouri's borrowing statute.

To avoid this result, plaintiff sets forth an alternative argument—that her negligence claims accrued in Arizona, where the statute of limitations still has not expired.  Ariz. Rev. Stat. § 12-514 (civil action arising from sexual contact or sexual conduct against a minor must be commenced within 12 years after reaching the age of 18).  In support of this argument, plaintiff asserts that because she suffered repeated wrongful acts, Mo. Rev. Stat. § 516.100 dictates that her claim did not accrue until the last incident of abuse.  *See* Mo. Rev. Stat. § 516.100 (a cause of action is deemed to accrue when the damage resulting from a breach "is sustained and is capable of ascertainment, *and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained*." (emphasis added)). This language codifies the "continuing

---

[4] Because KCRC did not argue until its reply brief that plaintiff's negligence claims against it must have accrued in Kansas, plaintiff has not had an opportunity to address that argument.  But even assuming KCRC had a duty to protect plaintiff from abuse outside its Kansas facility, plaintiff's claims against it would be barred by Nevada's statute of limitations.

wrong exception" to accrual, which applies when a wrong continues over a period of time. *See Sisson v. Patel*, 2021 WL 4228343, at *6 (W.D. Mo. Apr. 7, 2021). Plaintiff cites no Missouri case law applying the continuing damage rule in the context of a negligence claim.

As plaintiff candidly admits, the only case she references in support of her § 516.100 argument is a case involving installment contracts. *See Shawnee Bend Dev. Co. v. Lake Region Water & Sewer Co*., 419 S.W.3d 817 (Mo. Ct. App. 2013). While plaintiff asserts that "there is nothing to suggest that" Missouri courts would not apply this clause outside the installment contract context, the court in *Shawnee Bend* expressly stated that the Missouri legislature included the clause for the purpose of avoiding a multiplicity of suits in the installment contract context. Quoting the Missouri Supreme Court, the *Shawnee Bend* court explained:

> The legislature, probably for the purpose of avoiding a multiplicity of suits, as we construe Section 516.100, has seen fit to provide that in suits upon contracts where there is 'more than one item of damage' (installment) 'the cause of action shall not be deemed to accrue' (for the purpose of certain sections, including 516.110) until the last item of damage is sustained (last installment becomes due) so that all damages (installments) 'may be recovered, and full and complete relief obtained' in one action.

*Id*. at 826-27 (quoting *Sabine v. Leonard*, 322 S.W.2d 831, 838 (Mo. banc 1959)); *see also Ryerson v. Hemar Ins. Corp. of America*, 200 S.W.3d 170, 173 (Mo. Ct. App. 2006) ("the date that the statute of limitations commences to run on an installment note is the date the last installment of the note is due"). And in *Sabine*, the Missouri Supreme Court expressly "distinguished the question of when an action on a contract accrued from the accrual of an

action resulting from a claim for personal injury." *Shawnee Bend*, 419 S.W.3d at 827 n.10.

As explained by the *Sabine* court:

> We recognize that in the personal injury case hereafter cited, the fact that it became necessary to perform an operation upon the plaintiff three years after the injury, was held (under Section 516.100) not to delay the commencement of the limitation period, the court stating in the opinion that such matters were 'but aggravating circumstances enhancing the legal injury already inflicted, and constituting mere developments of such injury, and were not of a character to delay the accrual of the cause of action.' *Allison v. Missouri Power & Light Co.*, Mo. App., 59 S.W.2d 771, 773 (1933). However, that is not the situation in the case at bar. Here, we do not have the mere development of a cause of action.

*Sabine*, 322 S.W.2d at 838.  Moreover, plaintiff makes no effort to reconcile her reading of 516.100 with the sexual abuse cases analyzed by Missouri courts in which those courts have uniformly held that, absent repressed memories, such claims accrue at the time the abuse occurred.  The court, then, rejects plaintiff's argument that the Arizona assault was a distinct item of damage which delayed the running of the statute of limitations under § 516.100.  *See Duvall v. Yungwirth*, 613 S.W.3d 71, 77-80 (Mo. Ct. App. 2020) (continuing wrong exception contained in § 516.100 did not delay accrual of plaintiffs' negligence claims against attorney; while plaintiffs may have suffered continuing damages, those damages stemmed from negligent estate planning services in 2002).

For the foregoing reasons, plaintiff's negligence claims against USTA accrued in May 2010 in Nevada and her negligence claims against KCRC accrued in the summer or fall of 2010 in Kansas.  For all claims, the applicable statute of limitations was tolled until plaintiff's 18th birthday, in February 2013.  Beginning from that date, plaintiff had two years to file her claims against USTA, Nev. Rev. Stat. Ann. § 11.190(e), and three years to

file her claims against KCRC.  *See* K.S.A. § 60-523(a).  Her complaint was not filed until 2020.  The claims, then, are clearly time barred and both motions for summary judgment are granted on this basis.

Two other motions are pending before the court.  In connection with filing its motion for summary judgment, defendant USTA moved to file certain exhibits under seal (doc. 109).  To expedite the processing of the motion for summary judgment, the court granted the motion in part and retained the motion under advisement in part, indicating that it would resolve the sealing issue after a ruling on the merits of the motion for summary judgment. To the extent that motion to file under seal remains under advisement, it is now granted in its entirety.  Plaintiff, in connection with her response to USTA's motion for summary judgment, also filed a motion for leave to file certain exhibits under seal (doc. 132) which the court now grants.  Because the court did not rely on any of these sealed documents when it resolved the motions for summary judgment on the statute-of-limitations defense, the need for public monitoring is nonexistent.  Thus, the parties' articulated interests in confidentiality outweigh the need for public monitoring and the documents can remain sealed.  *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013); *New Jersey & Div. of Inv. v. Sprint Corp.*, 2010 WL 5416837, at *1 (D. Kan. 2010) (where court did not make any decision with respect to sealed documents, need for public monitoring was nonexistent and unsealing was unnecessary).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant United States Tennis Association's ("USTA") motion for summary judgment (doc. 110) is granted

13

and defendant Flex Financial Holding Company's motion for summary judgment (doc. 112) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant USTA's unopposed motion for leave to file under seal (doc. 109) is now granted in its entirety and plaintiff's motion for leave to file under seal (doc. 132) is granted.

**IT IS SO ORDERED.**

Dated this ___9th___ day of May, 2022, at Kansas City, Kansas.

                                      s/ John W. Lungstrum
                                    _____
                                    John W. Lungstrum
                                    United States District Judge